22-12-27, Kirsten v. Sgt. Gessner. Thank you. Before we get started, Ms. Villanueva, Ms. Pierce, can you see and hear us? Yes, I can, Your Honor. Thank you. Great. Okay, Ms. Villanueva, are you ready? Thank you, Your Honors, and may it please the Court, Emily Villano for Appellant Robert J. Pearson. So there are two grounds for relief before the Court today. The first concerns the District Court's violations of the conversion requirement. It was improper for the District Court to consider and credit over Mr. Pearson's contrary allegations, Defendant Gessner's narrative, and the video recording attached to defendants' motion. In order to avoid that finding of error, defendants asked this Court to make two very unreasonable assumptions. First, defendants insist that Mr. Pearson's purpose in attaching the report was to credit Defendant Gessner's self-serving narrative. And second, defendants insist that despite the fact that the District Court explicitly stated that the video recording was properly considered at the 12b6 stage, the District Court did not actually consider it. This Court should not reach either of these far-fetched conclusions, and as a result, the minimum relief to which Mr. Pearson is entitled today is vacator of the District Court's dismissal order. Here, however, we invite the Court to further hold that Mr. Pearson validly states constitutional claims. And that is because, if properly considered on its own terms, Mr. Pearson's allegations of arbitrary assault, an outright denial of medical care, and lasting injury give rise to plausible constitutional violations. I suppose, though, if you're inviting us to reach the merits of the sufficiency of the pleading without the improper evidence, that the flip side of that would be a request from your counterpart to consider whether he's stated a claim even absent that, to reach that legal question. Would you ask us to reach it to go either direction, or only to go your direction? Correct, Your Honor. We're inviting the Court to hold that Mr. Pearson plausibly states a valid constitutional claim, but the minimum relief to which he's entitled is vacator. And we have that decision in Friedel where the Court says explicitly that there is no harmless error analysis where violations of the conversion requirement are concerned. And the Court in Friedel did what we're asking the Court to do here, right? Despite stating that it could not consider, could not affirm the District Court's decision on the basis of its consideration of the sufficiency of the pleadings, it did, however, hold that the plaintiff there had stated valid claims if the complaint were considered on its own terms. Thank you. Can a video ever be considered on the motion to dismiss? You know, Mr. Pearson's complaint does say that, you know, this should be on videotape, and I don't know if that's enough to incorporate by reference, but it raises the question. Certainly if a plaintiff had attached a video recording or had properly incorporated a video recording by reference, it could properly be considered at the 12B6 stage. And this could be read as an invitation to take a look at the video. In order for a video to be incorporated by reference or to be considered integral to a plaintiff's complaint, the plaintiff has to rely on that extraneous material in order as a basis for its claim. So often this concerns a written instrument like a securities disclosure or a contract where the plaintiff's claims rise and fall on the terms of that written instrument, right? But here, you know, Mr. Pearson did not even know whether the video recording actually existed, right? He says it should be on videotape, but he had never seen it. He didn't know whether there were actually a video recording. So he plainly did not rely on the video recording in writing his complaint or basing his allegations on that video recording. So let's start in terms of talking about the violations of the conversion requirement. Let's briefly touch on the inmate misbehavior report. So there's no dispute between defendants and Mr. Pearson that the district court relied on the write-up of events authored by defendant Gessner and contained in the inmate misbehavior report that was attached to Mr. Pearson's complaint. But Mr. Pearson did not adopt defendant Gessner's narrative simply by attaching the report to his complaint. That's this court's ruling in Gaunt. A plaintiff does not adopt as true the full contents of any exhibit attached to a complaint. Rather, the report should have been read in light of Mr. Pearson's allegations, which must be accepted as true, and in light of his theory of the case, how he invited the court to read it. Was it attached to his initial complaint or just to his amended complaint? Good question. It was not attached to his initial complaint, and I think there's a very clear inference for the court to draw here with respect to Mr. Pearson's purpose in attaching the report. He did it in direct response to the district court's order that he named the DOE defendants. Certainly, if Mr. Pearson had been well counseled, it's possible that he simply would have taken the names from the inmate misbehavior report and used them in the body of his amended complaint form. Instead, he attached the inmate misbehavior report. But we should not fault Mr. Pearson for not knowing that by attaching the complaint, the court would also potentially, you know, that it would invite this risk that the court would consider defendant Gessner's narrative. And, in fact, a panel of this court in Shatbert held that the adoption rule should never apply where we have a pro se plaintiff and adoption would result in dismissal of the complaint. So let's move to the video recording. Very quickly, there is no dispute between the parties that the district court should not have considered the video recording in considering Mr. Pearson's motion. Defendants now only dispute whether the district court considered the video recording, and that really cannot be up for debate. The district court cited to it 20 times, used it as the sole basis for one of its grounds for dismissal of Mr. Pearson's complaint, and explicitly stated that it was considering the video recording. And as Judge Robinson and I just discussed, there is no harmless error analysis here, so it does not matter whether the district court might have dismissed Mr. Pearson's complaint without reliance on the video. What do we do with the fact that the court on the ... I mean, clearly the video doesn't tell us anything about the excessive force claim because it starts after that. As I read the district court's analysis, the court does an analysis on the deliberate indifference claim and then drops a footnote that sort of describes the events in the video as an alternative theory, which might lend credence to the notion that the court didn't actually consider it in its merits analysis. What's the response to that? So, sorry, the merits analysis of the deliberate indifference claim specifically? Yes. So the standard here is that the conversion requirement has been violated. Anytime there's a legitimate possibility that extraneous material has colored the district court's analysis of the plaintiff's claims. And here we think it's very clear that the video recording, which again makes up the majority of the background section of the complaint here, colored the district court's analysis of Mr. Pearson's claims. We think that could even extend to the deliberate indifference claim, but with respect to the district court's finding that Mr. Pearson's injury was not sufficiently serious, even though it doesn't expressly cite to the video recording in that section of its decision, we certainly cannot rule out the legitimate possibility that the video recording had a role to play there in the court's analysis. Thank you, counsel. You've reserved a few minutes for a vote. Ms. Pierce? May it please the court, my name is Carol Pierce and I represent the employee in this matter. The district court properly dismissed the amended complaint where the appellee, the client, failed to plead sufficient facts to allege 1983 claims. Although courts are lenient to pro se plaintiffs, they still have to meet the pleading requirements as required under Iqbal and Twombly, and here the appellant failed to do so. In response to the appellant's arguments, there were two, when she said there were two grounds for relief, and I would point out that the Gessner narrative that she's talking about was not an extraneous document that the defendants put on, but it was actually part of the pleadings. The plaintiff put the narrative as part of his pleadings, and under 10C the court is allowed to consider the entire document. In fact, he invited the court and had a separate note that said, here's attached evidence for my case. He actually attached it twice to his report. He did not have to use the report. He, up at the top, he put Judge Halpern's name, he put the case number, and frankly, absent that report, his form of amended complaint would not have provided any facts whatsoever to even have any claims. It was only through the report and through the narrative that the appellant now wants to disregard that you're able to find out who the officers were and what happened. I understand the argument to be a little bit less binary. I understand the argument not to be either you are allowed to look at the report or not, but that, yeah, it was attached to the complaint, maybe you can look at it, but in looking at it at the pleading stage, that doesn't mean you can make credibility determinations and credit narrative recitations that conflict with the allegations in plaintiff's complaint. It's distinct from, say, a contract where the plaintiff says, this is our contract, doesn't deny that the contract as attached is in fact the contract, and the court can go ahead and do its contract interpretation based on that. Isn't that essentially what the Gantt case tells us, that sure, you can look at it, but you can't then credit the statements to the extent they conflict? Well, yes, Your Honor, but I would submit that this case is different than the Gantt case, and I would submit that the narrative that he put forth is consistent with his form complaint. If you read his form complaint, he said that he was on the door because he had a problem with his food. He also, absent that narrative, he found this to be a plausible claim under Iqbal. The appellate here wants to take part and parcel of the narrative to say, well, I want to use this part of the narrative in order to establish liability, but yet not use part of the narrative to explain the facts, and I would submit that the Gantt case is distinguishable in the fact that the report did not stamp the proposition that the plaintiff proposed. Here, the plaintiff invited the court and said, here, here's the facts. This is what happened. Nowhere does he allege that Gessner lied, that it wasn't true, that I disagree. There's no inconsistency here between his form complaint and the narrative, Your Honor. To that extent, then the other portion we were talking about is the video, and I would submit that the court, as Your Honor pointed out, that the court did not rely on the video in making its determination here. Preliminarily, the video only has to deal with the deliberate indifference claim, and the court here found that the plaintiff failed to meet the objective prong of the deliberate indifference claim, and in that respect, it dismissed on the pleadings alone as it should on a 12B6 motion. But the video doesn't show how long it took the officers to start taking him to the medical facility, does it? The video does show that, Your Honor. It shows between the food tray incident and the spraying and the start of the trip the officers made to take him to the medical office. How does the video show that? Doesn't the video start at the time they begin their trek from the cell to the office? I believe the video starts when they had got Mr. Pearson into handcuffs immediately thereafter, and that's when it starts. They cuff him. They have him facing the wall. They cuff him, and then they escort him to the medical. Your Honor. And the trip back from the medical office, which, according to the video, takes approximately the same number of minutes and seconds, does that include getting him into the cell and taking him out of his handcuffs? I'm sorry, Your Honor. Your question is? Well, according to the video, it's approximately the same amount of time from the cell to the medical office at both ends of the trip, which doesn't seem to include any amount of time between the incident that began this, of which he complains, and the spraying. All right. So the video doesn't show how long, what the interval was between the spraying and the start of the trip to the medical office? That is correct. The video starts after the spraying incident, Your Honor. But as I mentioned to this court, the court did not use the video in this, thus properly did not have to convert this motion into a Rule 56 motion. It properly looked at the pleadings and determined that the appellant here did not, based on the pleadings, did not sufficiently state a cause of action for deliberate indifference. Additionally, it's well settled that a personal involvement is required under an 1883 action, and the appellant's complaint failed to allege any personal involvements for Officers Bruckle, Morris, and Halsted. Just being present, and again, they lead it through the narrative, but just being present, there's no allegations that they participated in any constitutional violation here. One of the things I was trying to figure out is the allegations referred to they. The officers did this, they did that, and we have the corroboration that they were present. Isn't that enough at the pleading stage, at least for a pro se, to satisfy the individuality requirement? He's named them all, he said they did this. Why isn't that enough? Well, Your Honor, when he says they did this and that, he only says that one officer sprayed him. He doesn't allege any officer did anything else. And here, there are no facts to support that they were deliberately indifferent to his medical needs, that they were even present at medical, that there were any pleas that he needed to go to medical, and they were not, they did not adhere to it, they didn't take him. In fact, he admits that he went to medical right after, and that it was medical, in fact, that failed to provide treatment for him. So his dispute is with the medical staff and not the correctional staff. Maybe I misinterpreted it. I thought that the medical claim was about the fact that he had not gotten a decontamination shower and had been left in the clothes that he was wearing at the time. He'd been allowed to wash his eyes. Actually, maybe we know that from the narrative, not from him. But that he had been left in those clothes. And that isn't, although it's a deliberate indifference claim, that doesn't necessarily absolve the officers who were managing his care. I don't know whether that's really a medical thing or a non-medical thing. But am I missing something there? Well, Your Honor, there is no allegation that these officers are the same officers that brought them back. These officers were present during the spraying incident, but there's no allegations that these are the officers that failed to bring him back and failed to give him a decon shower. I see. In the complaint itself, it merely states that he went to medical and that he was not provided medical treatment. It says the officers did not give me a shower, and they didn't give any clothing, and they put me back in the cell the same way they took me out, turned off the water in my cell, did not give me any new clothing. So I guess I'm wondering whether the officers, he hasn't named any other officers besides the defendant, but you think he'd have to rename them here? He would have to allege that these are the officers that did this to him. But in this scenario, he has failed to do so. And if the court has no further questions, I'll rest on my brief. Thank you, counsel. Thank you. I'll hear rebuttal. So I'd like to start with this contention that Mr. Pearson has failed to allege the personal involvement of defendants Brockle, Halstead, and Morris. First of all, under Section 1983, personal involvement requires only that an officer directly participated in conduct giving rise to a constitutional violation. And that can include helping others with an alleged infraction. It doesn't require that one individual is ultimately responsible for, for example, a denial of medical care. Here, Mr. Pearson alleges that multiple officers were present when he was assaulted. They witnessed his injurious exposure to chemical spray. They removed him from the cell but failed to decontaminate him. They brought him to the infirmary where nothing was done for him. And then they brought him back into a new cell without a decontamination shower or a change of clothing. And even went so far as to shut off the water in that cell so that he could not decontaminate himself. Under Section 1983, and certainly at the 12v6 stage for a pro se plaintiff, these allegations suffice for a deliberate indifference claim. The only question regarding personal involvement really has to do with whether Mr. Pearson needed to explicitly name defendants Morris, Brockle, and Halstead in the body of that amended complaint form. And we think that's really asking a lot of a pro se plaintiff. He did quite a bit here to specify who he was talking about, right? He listed the officers in that defendant information section of the amended complaint form. And he also referenced the inmate misbehavior report which identifies these officers as witnesses to his assault. Next I'd like to address the opposing counsel's contention. The defendant Gessner's narrative is somehow consistent with Mr. Pearson's pleadings. First of all, the inmate misbehavior report itself evidences that Mr. Pearson pled not guilty to all of the charges in defendant Gessner's narrative. So however we take the inmate misbehavior report, it cannot be taken for this self-evident truth of what actually happened there. Mr. Pearson already contests defendant Gessner's narrative within that exhibit. And second, the report needs to be read not only in light of Mr. Pearson's allegations which should be expected as true, but also in light of reasonable inferences that must be made in Mr. Pearson's favor. Mr. Pearson alleges that he was doing nothing more than ask for help when he was arbitrarily assaulted. There's no mention of him disobeying orders, no mention of a warning, and reasonable inferences must be drawn in Mr. Pearson's favor from those allegations. So maybe with the remainder of my time just to mention that defendants have no argument that Mr. Pearson has not alleged a sufficient excessive force claim if defendant Gessner's narrative is set aside. If there are no further questions, I'll rest on the briefs. Thank you, counsel. Thank you both. And thanks, as well, I know the work firm for your service. We'll take the case under advisory. Thank you, Your Honor.